IRA ANDERSON v. MICHAEL BRUCE MANN AND CHRISTINE BARNWELL MANN

No. 7019SC422

(Filed 16 September 1970)

1. **Rules of Civil Procedure § 50— motion for directed verdict — sufficiency of evidence**

    On appeal from the granting of a motion for a directed verdict, the Court of Appeals must determine the sufficiency of plaintiff's evidence guided by the same principles applicable in determining the sufficiency of evidence to withstand the former motion for nonsuit under G.S. 1-183.

2. **Rules of Civil Procedure § 50— motion for directed verdict — consideration of evidence**

    Upon motion for a directed verdict, all the evidence tending to support plaintiff's claim must be taken as true and considered in the light most favorable to him, giving him the benefit of every reasonable inference which legitimately may be drawn therefrom, with contradictions, conflicts and inconsistencies therein being resolved in plaintiff's favor.

3. **Rules of Civil Procedure § 50— directed verdict for contributory negligence**

    Defendant is entitled to a directed verdict if plaintiff's evidence, considered in the light most favorable to plaintiff, so clearly establishes

his own negligence as one of the proximate causes of his injury that no other reasonable inference can be drawn therefrom.

**4. Automobiles § 83— contributory negligence of pedestrian — failure to yield right-of-way to vehicle**

Plaintiff's evidence disclosed that he was contributorily negligent as a matter of law in failing to yield the right-of-way to a vehicle upon the roadway while crossing the roadway at a point other than within a marked crosswalk or an unmarked crosswalk at an intersection in violation of G.S. 20-174(a), where it tended to show that plaintiff's car stalled in the right-hand traffic lane, that plaintiff turned from his car and started across the road toward a store, that when he had taken three or four steps he was struck by defendant's car which approached from behind plaintiff's car, and that plaintiff's vision in the direction from which defendant approached was unobstructed for a distance of one-half mile.

**5. Automobiles § 46— opinion testimony as to speed — contradiction by physical facts**

Where plaintiff's own evidence showed that defendant's car left skid marks of only 27 feet, opinion testimony by plaintiff's witness that defendant was traveling 60 miles per hour is contrary to human experience.

APPEAL by plaintiff from *Copeland, S.J.,* 2 March 1970 Session of RANDOLPH Superior Court.

Plaintiff seeks to recover for personal injuries allegedly sustained when he was hit by a car owned by defendant Christine Barnwell Mann and then being driven by defendant Michael Bruce Mann. Plaintiff alleges that the accident occurred at approximately 2:30 p.m. on 18 January 1965; that plaintiff's car had stalled "on the right hand traffic lane being unable to move it from the hard surface portion of the highway and raised the hood on said motor vehicle and attempted for several minutes to get it started"; that he failed in this attempt and started across the highway to a store; that "as he was almost across the highway" he was struck by defendant Mann. He alleged defendants were negligent in that defendant Mann, the driver, negligently failed to maintain a proper lookout, negligently failed to keep control of the car, operated the car carelessly and recklessly and in willful and wanton disregard of the rights and safety of others, drove at a speed greatly in excess of a reasonable and prudent speed, drove on the left side of the highway, attempted to pass plaintiff's stalled vehicle without 500 feet unobstructed vision, attempted to pass plaintiff's vehicle

"against the no passing yellow lines on said highway," and failed to sound his horn.

The complaint alleged and the answer of defendants admitted that vision in the direction in which defendant Mann was approaching was unobstructed for 1500 feet.

Each defendant filed separate answer. Each denied the allegations of negligence, averred that the accident was solely caused by plaintiff's negligence and pleaded plaintiff's contributory negligence as a bar to any recovery.

At the end of plaintiff's evidence, defendants' motion for directed verdict was allowed. Plaintiff appeals.

*Ottway Burton for plaintiff appellant.*

*Perry C. Henson and Thomas C. Duncan for defendant appellees.*

MORRIS, J.

The record does not reveal any motion made at the close of plaintiff's evidence. However, at oral argument counsel entered into a written stipulation, filed as a part of the record, that this Court consider the motion made as a motion for directed verdict. The grounds therefor are set out in the judgment, to wit, "that the plaintiff offered no evidence of negligence on the part of the defendant and, even if there were such evidence, the plaintiff's evidence disclosed contributory negligence on the part of the plaintiff."

[1] On appeal from the granting of a motion for directed verdict, we must determine the sufficiency of plaintiff's evidence guided by the same principles applicable in determining the sufficiency of evidence to withstand the former motion for nonsuit under G.S. 1-183. *Musgrave v. Savings & Loan Assn.,* 8 N.C. App. 385, 174 S.E. 2d 820 (1970).

[2] Under the established rules all the evidence tending to support plaintiff's claim must be taken as true and considered in the light most favorable to him, giving him the benefit of every reasonable inference which legitimately may be drawn therefrom, with contradictions, conflicts and inconsistencies therein being resolved in plaintiff's favor. *Bowen v. Gardner,* 275 N.C. 363, 168 S.E. 2d 47 (1969).

[3] If plaintiff's evidence, considered in the light most favor-

able to him, so clearly establishes his own negligence as one of the proximate causes of his injury that no other reasonable inference can be drawn therefrom, then defendant is entitled to a directed verdict. *Bowen v. Gardner, supra.*

[4]    Plaintiff's evidence tended to show that on the day of the accident the sun was shining, the road was clear but there was snow on the shoulder of the road "where the highway people had pushed it off" "half knee deep." As plaintiff was proceeding down the highway driving his 1952 Buick, the car cut off and "came to a halt" right in front of Stradler's store. It was "over on the right hand side over as far as, next to the snow as you could get" still on the hard surface. The width of the hard surfaced portion at that point was approximately 24 feet. Looking back in the direction from which plaintiff had come, the road was level and one could see about half a mile. At that time at that point on the road there was a double yellow line surrounding a white broken line and the posted speed limit was 45 miles per hour. Plaintiff got out, raised the hood on his left side of the car, and put his hand over the carburetor to try to get the car started. His son, seated in the car, was to mash the starter. This did not work and plaintiff testified: "I said I will walk over to the store and get a bottle of gas and we will pour some gas in the carburetor to see if it will crank. As to whether I started walking across to the store, I turned around and when I turned around that is all I ever remember. When I turned around, I turned around in the direction of the store, faced the store."

On cross-examination plaintiff testified "I never saw the car that hit me. As to you understanding that I said I turned around from the side of the car to walk across the road to get gas, I told my oldest boy, I said, 'I will go over there and get a bottle of gas and pour it in the carburetor.' I never did get started to get the gas. I turned around to speak to him and that was the last thing I remember."

Plaintiff's son testified that he was a passenger in his father's car in the front seat. There was no other passenger. When the car stalled, his father got out and raised the hood on the left side and tried to start it. He told his son that he was going to Stradler's store and get a bottle of gas. "He started over. He got far enough for the fenders of the car if you are out in the street that the defendant's car on the left side picked him up." "It picked him up and he slid his wheels 27 feet before

he ever got stopped." The witness first saw the defendant's car when it was about 300 feet behind them. He watched it through the rear view mirror until the driver pulled over in the left hand side of the road. "I did not see him when he came back into view there on the left hand side until after he had done hit my father because we didn't have no side mirror on the car." In the opinion of the witness defendant was operating his automobile at a speed of 60 miles per hour.

On cross-examination, he testified that he stepped off the skid marks and they were 27 feet in length and angled a little bit over toward the driveway to the store on the left hand side of the road. Plaintiff had taken three or four steps. "I didn't see the car hit my father. I saw the car after it had hit my father." Plaintiff was knocked forward some distance and came to rest in "that left hand lane over there with his head toward the edge of the road and his feet toward back to the center of the road, more or less straight across the road." The defendant told the witness that he didn't see the plaintiff.

"Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway." G.S. 20-174(a).

The uncontradicted evidence is that the plaintiff's vision in the direction from which defendant was approaching was unobstructed for a distance of one-half mile. Plaintiff's son testified that he watched defendant's car approaching from a distance of 300 feet. Plaintiff himself testified that he turned from the car and faced the direction of the store. From his own evidence he had every opportunity to see the approaching vehicle and yield the right-of-way as it was his duty to do.

[4, 5] We do not concede that the uncontradicted evidence tends to show that defendant was traveling 60 miles per hour in a 45 mile-per-hour zone. On the contrary, we are of the opinion that in the light of plaintiff's own evidence that defendant's car left 27 feet of skid marks, the suggestion that he was traveling at a speed of 60 miles per hour is contrary to human experience. See *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246 (1945), and *Burgess v. Mattox,* 260 N.C. 305, 132 S.E. 2d 577 (1963). However, even should we concede that defendant was exceeding the speed limit and should have seen the plaintiff, a reading of plaintiff's evidence leads to the conclusion, as

a matter of law, that his own negligent conduct contributed to his injury.

The judgment of the trial tribunal is

Affirmed.

BROCK and GRAHAM, JJ., concur.