GEORGE WAYNE BLEDSOE v. MILDRED M. GADDY

No. 7120SC165

(Filed 24 February 1971)

1. **Negligence § 35— contributory negligence—grounds for directed verdict**
    A directed verdict on the ground of contributory negligence will be allowed only when plaintiff's evidence, taken in the light most favorable to him, so clearly establishes contributory negligence that no other reasonable inference or conclusion can be drawn therefrom.

2. **Automobiles § 79— intersectional accident — malfunctioning traffic light — contributory negligence**
    Plaintiff's testimony that he approached an intersection controlled by a malfunctioning traffic light, that he knew from prior experience that the light would change from red to blank, that after the light had changed from red to blank in the instant case he entered the intersection and collided with defendant's car, which had approached the intersection from plaintiff's right, *held* insufficient to establish plaintiff's contributory negligence as a matter of law.

3. **Automobiles § 19— intersectional collision — malfunctioning traffic light — liability of the drivers — instructions**
    Where two drivers approaching an intersection at right angles knew that the traffic light controlling the intersection was malfunctioning in relation to their respective streets — the light changing from red to blank for one street and the light changing from blank to green for the other street — the liability of the drivers for the resultant intersection collision was to be determined on the supposition that the light was properly working at the time of the collision; consequently, the trial court properly refused to instruct the jury on the law governing the right of way at an intersection not controlled by traffic lights. G.S. 20-155(a).

APPEAL by defendant from *Kivett, J.,* September 1970 Session, RICHMOND Superior Court.

This case arose out of an automobile collision at a street intersection in the City of Rockingham, resulting in personal injuries and property damage to both plaintiff and defendant. Defendant filed counterclaim for her damages.

The evidence tended to show: on 6 November 1968 traffic at the intersection of Randolph Street, which ran north and south, and Green Street, which ran east and west, was controlled by an overhanging automatic traffic light. Around 1:15 p.m. on that date plaintiff was operating his automobile south on Randolph Street and defendant was operating her automobile east on

Green Street. It was stipulated that the traffic light was erected pursuant to lawful authority and on said date was not functioning properly. For some week or two prior to the accident, and at the time of the accident, the light as seen from Randolph Street emitted only a red signal and no signal was emitted when the green light should have shone. Plaintiff, who traveled Randolph Street daily, was aware of this condition and assumed that when no light was emitted on Randolph Street he could proceed. On Green Street the signal emitted only a green light and when it should have turned red no signal was emitted. Defendant, who traveled Green Street almost daily, was aware of this condition and interpreted it to mean that when no signal was being emitted she should stop. Neither party was aware of the condition of the light as seen from the direction that the other party was traveling.

Plaintiff testified that as he approached the intersection he slowed to five m.p.h.; that when he was about one car length from the intersection the light in his direction changed from red to blank; that he had observed the defendant approaching from his right and had thought that she was slowing down; that he continued on into the intersection where the defendant struck him. Plaintiff also saw the witness Tyler coming north on Randolph and saw her stop for the red light at the time plaintiff was about one and one-half car lengths from the intersection. Immediately thereafter the light on Randolph Street turned from red to blank.

Defendant testified: As she approached the intersection she never saw plaintiff's vehicle although there was nothing to obstruct her vision in plaintiff's direction. She saw the Tyler car stop at the intersection. As she approached the intersection the traffic light facing her was green and since she knew of its defective condition, she watched it all the way. She entered the intersection at approximately 15 m.p.h. on a green light and could not remember the actual collision.

An investigating officer stated that he questioned the defendant after she was released from the hospital and defendant told him that she did not pay any attention to the traffic light.

Mrs. Doris Tyler, driver of the northbound vehicle on Randolph Street which was stopped at the intersection at the time of the collision, testified: She was familiar with the defective traffic signal and knew that it was malfunctioning as to

traffic on Randolph and Green Streets. When she approached the intersection a few moments before the collision the light was red for traffic on Randolph. When she saw the light turn from red to blank she did not proceed because she saw defendant's car approaching from her left. A few seconds before the collision the light on Randolph turned from red to blank. She saw plaintiff approach the intersection and the light was blank when he entered.

Defendant's counsel made timely motions for directed verdict and for judgment n.o.v. The motions were denied and from judgment entered on verdict in favor of plaintiff, defendant appealed.

*E. A. Hightower and Leath, Bynum & Kitchin, by Fred W. Bynum, Jr. for plaintiff appellee.*

*Webb, Lee, Davis & Sharpe by Hugh Lee for defendant appellant.*

BRITT, Judge.

[1, 2] By her first assignment of error, defendant contends that the trial court erred in failing to direct a verdict in her favor because of the contributory negligence of plaintiff. This assignment of error is without merit. A directed verdict on the ground of contributory negligence will be allowed only when plaintiff's evidence, taken in the light most favorable to him, so clearly establishes contributory negligence that no other reasonable inference or conclusion can be drawn therefrom. *Galloway v. Hartman,* 271 N.C. 372, 156 S.E. 2d 727 (1967); *Anderson v. Mann,* 9 N.C. App. 397, 176 S.E. 2d 365 (1970). We hold that the evidence did not establish plaintiff's contributory negligence as a matter of law, therefore, the assignment of error is overruled.

[3] By her second and third assignments of error, defendant contends that the court erred in instructing the jury that the law pertaining to properly erected and operating traffic signals was applicable in this case; and in refusing to instruct the jury on failure to yield the right-of-way at an intersection as required by G.S. 20-155 (a). We hold that these assignments of error are without merit.

Bledsoe v. Gaddy

The legal proposition presented by the second and third assignments of error appears to be without precedent in this court or the Supreme Court; however, we think the case of *Kelly v. Ashburn,* 256 N.C. 338, 123 S.E. 2d 775 (1962) is analogous. In that case the evidence tended to show: The accident in question occurred at the intersection of Woodland Avenue and Hughes Street in the City of Sanford. Plaintiff was driving north on Woodland and defendant was driving west on Hughes. Plaintiff testified that he was familiar with the intersection and that after Hughes Street was completed, stop signs were erected at its east and west entrances into Woodland; he knew these signs had been at the intersection for the previous two years and at the time of the accident he had no notice that the stop sign at the eastern approach on Hughes was down. The stop sign was replaced after the accident. Defendant testified that he was not familiar with the intersection, did not know that stop signs had ever been erected on Hughes Street, and he thought he could cross the intersection at Woodland before plaintiff entered the intersection. The trial judge instructed the jury on the provisions of G.S. 20-155(a) to the effect that when two vehicles approach or enter an unmarked or uncontrolled intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle to the right; the court specifically charged as follows:

> "And I charge you peremptorily that if you find that if you find that there wasn't a stop sign there and that these motor vehicles approached this intersection, the two of them, at approximately the same time, which I shall define to you in a moment, —and if Kelly failed to yield the right of way to Ashburn, he would have been guilty of negligence under our law."

The jury found that defendant was negligent and plaintiff was contributorially negligent; from judgment on the verdict, plaintiff appealed. The Supreme Court, in an opinion by Higgins, Justice, held that the instruction was erroneous; we quote from the opinion:

> "This evidence is sufficient to present the question whether as to the intersection on the occasion of the accident the plaintiff had the right to assume that traffic from the east on Hughes would yield. Plaintiff's conduct

is to be judged by the rule of the prudent man; that is, by that which a man of ordinary prudence would do under the same or similar circumstances when charged with like duty. These questions arise on the issue of negligence.

\* \* \* \*

"The defendant was not familiar with the intersection. He was on the plaintiff's right and was not confronted by stop sign notice that Woodland was the preferred street. His conduct likewise must be judged by the rule of the prudent man, by that which a man of ordinary prudence would do under the same or similar circumstances, when charged with like duty. Each party's responsibility is to be judged in the light of conditions confronting him.

\* \* \* \*

"After all, responsibility for an accident must be determined upon the basis of the particular facts of each case. One party, or both, or neither, may have acted in accordance with the rule of the prudent man. Consequently, a collision at an intersection where a stop sign has been erected and then removed or defaced may result from the negligence of one party, or both, or neither. The court's charge in this case was a peremptory instruction to find the plaintiff was negligent by reason of his failure to yield to the defendant on his right.

\* \* \* \*

"In the case before us the evidence was sufficient to present the question whether the plaintiff, under the circumstances that confronted him, was warranted in assuming he had the right of way through the intersection. The peremptory instruction to the contrary was prejudicial error for which we order a

New trial."

Although the facts in *Kelly v. Ashburn, supra,* are quite different from those in the instant case, we think the legal principles in the two cases are sufficiently similar for us to conclude that "in the case before us the evidence was sufficient to present the question whether the plaintiff, under the circumstances that confronted him, was warranted in assuming he had the right-of-way through the intersection." The jury

instructions which defendant insists she was entitled to in the instant case—that the vehicle approaching an intersection from the right had the right-of-way under G.S. 20-155(a)—was the same instruction which the Supreme Court disapproved in *Kelly v. Ashburn, supra*. In the case at hand each party knew of the malfunctioning traffic signal. On cross-examination defendant testified: "I go along this street almost every day. * * * I knew the light had not been working for several days. * * * I knew the green came on and the red did not come on facing me. * * * If the light was not shining green, it means for you to stop, but it was shining green. * * * If the light had been shining nothing and was not shining green, I would have stopped and I knew I was supposed to stop. * * * I do not recall ever having seen Mr. Bledsoe nor do I recall looking to my left."

Defendant did not contend that she misinterpreted the traffic signals; she insisted that she had a green light when she entered the intersection.

With each party knowing how the traffic signal malfunctioned on his or her street, we think the rights and duties of the drivers were determined on the basis of their prior knowledge and not on the objective condition of the intersection. The assignments of error are overruled.

We hold that the parties received a fair trial free from prejudicial error.

No error.

Judges CAMPBELL and HEDRICK concur.