I respectfully dissent from the majority's reversal of the Deputy Commissioner's Decision and Order in this matter and would adopt and affirm the decision of the Deputy Commissioner on the grounds that there is no violation of a duty on the part of defendant. Moreover, even if defendant were in breach of a duty, there is no proximate cause relating such action or inaction to decedent's suicide.
The plaintiff has the burden to prove by the greater weight of the evidence through expert witnesses that the examining physician failed to meet the standard of care. N.C. Gen. Stat. §90-21.12, Assaad v. Thomas, 87 N.C. App. 276, 360 S.E.2d 503
(1987), app. dism., disc. rev. denied, 321 N.C. 471,364 S.E.2d 917, reh'g denied, 321 N.C. 747, 366 S.E.2d 856 (1988); Ballengerv. Crowell, 38 N.C. App. 50, 247 S.E.2d 287 (1978). In the case at hand, not only did plaintiff fail to prove by the greater weight of the evidence that the examining physician, Dr. Coffey, failed to meet the standard of reasonable care in not admitting the decedent, plaintiff further failed to prove causation.
There are two possible theories on which negligence on the part of the defendant in this case may be based which are the duty or standard of care applicable to the examining physician and the duty imposed by the Single Portal of Entry Agreement (hereinafter Agreement) between Piedmont Area Mental Health Center (hereinafter Piedmont) and Broughton Hospital (hereinafter Broughton).
In the opinion of the undersigned, Dr. Coffey did not fail to uphold his duty and was not negligent in the non-admission of decedent. Not only did Dr. Coffey make a reasonable judgment as is required of an examining physician, he was not negligent by not strictly adhering to the Agreement's procedure for notification to the referring agency of non-admission within 24 hours. Furthermore, proximate cause has not been established. That Dr. Coffey was reasonable in his judgment not to admit plaintiff is supported by the expert testimony of Dr. Kilbride who is the clinical director at Broughton and who had actually admitted decedent on a previous occasion. Furthermore, even plaintiff's expert witness, Dr. Billinsky, moderated his assessment of Dr. Coffey's non-admission of decedent and stated that since Dr. Coffey was present at the examination to observe decedent and to have first-hand knowledge of decedent's condition, he was in a better position to make a decision regarding admission; therefore, non-admission may have been appropriate. This statement was qualified only by the requirement that Dr. Coffey do an adequate examination in his best judgment. In fact, Dr. Coffey did an adequate examination by examining decedent for approximately one hour, reviewing the notes regarding decedent's suicidal ideations written by Mr. Shaw who referred decedent to Broughton and whose training was that of a social worker rather than that of a psychiatrist. Further, Dr Coffey conducted a discussion with the decedent during which time the decedent denied any suicidal ideations. After this assessment, Dr. Coffey released decedent based on his past history, his current state, and in line with Broughton's and the Agreement's goal that he should be in the least restrictive environment. In addition, the decision for non-admission was based on the fact that he had a good support network with his wife, mother, and the local mental health office.
In addition, Dr. Coffey significantly complied with the Agreement which has goals of efficiency, cost-effectiveness, and allowing patients to live in the least restrictive environment as possible. Plaintiff and the majority contend that Dr. Coffey was negligent in not formulating an alternative plan to non-admission as required by Broughton procedures and the Agreement. In fact, Dr. Coffey, as supported by the testimony of Dr. Kilbride, did develop an alternative plan to non-admission. First, there was an already existing plan at Piedmont which was supervised by Dr. MacDonald. Next, Dr. Coffey created an alternative plan by modifying plaintiff's medication dose, instructing decedent to return to Piedmont within one week during which time the medication should take effect. This plan took into consideration decedent's denial of suicidal ideations, his long relationship with Piedmont, his family support system, his experience of 20 years as a patient, his adequate supply of medication, and the Agreement's goal of treatment in the least restrictive environment. Considering all of these factors, Dr. Coffey did not, as the majority contends, place the burden of decedent's mental health care on decedent.
Plaintiff and the majority are correct that, although Dr. Coffey attempted to contact Piedmont within 24 hours of non-admission as required by the Agreement, his attempt was unsuccessful. This violation is not negligence per se on the part of Dr. Coffey considering the purposes of the Agreement which are efficiency, cost-effectiveness, and allowing patients to live in the least restrictive environment. Further, this failed attempt to contact Piedmont alone is not an exercise of judgment by Dr. Coffey that was an unreasonable breach of duty which proximately caused decedent's suicide thereby resulting in Broughton's negligence. Even if one assumes arguendo, that Dr. Coffey did not strictly adhere to guidelines thereby not performing his duty by failing in his attempt to notify Piedmont of the non-admission within 24 hours, there is nevertheless a lack of proximate cause to link Dr. Coffey's failed attempt to contact Piedmont with decedent's subsequent suicide. To hold that the lack of a telephone call within 24 hours was the, or even one, of the proximate causes of decedent's suicide two days later is to hold all doctors and hospitals responsible for patients' actions that are beyond the control and responsibility of the hospitals. Decedent's past conduct actually supports his non-admission and illustrates the lack of proximate cause. For example, in April 1990 when the decedent was not taking his medication, no hospitalization at Broughton was recommended by Piedmont; on 26 November 1991, though decedent had asked Piedmont's staff to recommend hospitalization, his request was denied and a week later he was feeling better. Thus, decedent's suicide was not proximately caused by his non-admission, much less by the lack of one telephone call within 24 hours by Dr. Coffey.
In finding defendant Dr. Coffey and Broughton Hospital in violation of a duty and, furthermore, negligent, the majority, in the opinion of the undersigned, improperly gives greater weight to the judgment of Mr. Shaw, a social worker at Piedmont, and Dr. Billinsky, who qualified his testimony, admitting Dr. Coffey was in the better position to make a decision on non-admission, provided an adequate exam was conducted, than to the judgment of Dr. Kilbride, the clinical director and prior administrator of Broughton, and Dr. Coffey, an experienced psychiatrist at Broughton who had actually been present during a previous hospitalization. In addition, the majority places too great an emphasis on Dr. Coffey's failed attempt to contact Piedmont within 24 hours of decedent's non-admission.
 S/ _________________ DIANNE C. SELLERS COMMISSIONER